LEWIS, J., specially
concurring.
I concur with the majority’s establishment of minimum standards for conflict counsel in death penalty cases as well as our announced intention to extend these standards to public counsel. These standards are essential prerequisites if we are to ensure a fundamentally fair adversarial process in this most serious class of criminal cases. However, for the reasons expressed below, I believe that the time has arrived for further consideration of expanding the net of protection if our underlying purpose is truly to ensure that competent representation is provided to capital defendants in all cases.
First, I wholeheartedly agree that we cannot exclude public defenders and capital collateral representatives from these meaningful requirements. Although all of these categories are within those provided by the government, if we exclude those lawyers, we would be left with only history and continued good faith to assure us that the majority of capital defendants, i.e., those represented by public defenders and some later by capital collateral representatives, would have counsel with credentials that meet the minimum standards established today. Further, I believe we have an obligation to the public to continue to analyze, through either this type of rule or rules of professional responsibility, whether privately retained counsel should be included where death may be imposed. It may be time for us to further consider expansion of the protective measures where the ultimate sanction for the losing defendant is a death sentence.
We should also take note of the commendable practices of other states. Notably, several other jurisdictions that have adopted minimum standards for counsel in capital cases draw no distinction between appointed private attorneys and public defenders. See Ind. R.Crim. P. 24 (1999);[10] Tenn. Sup.Ct. R. 18(3) (1998); Va.Code Ann. § 19.2-168.8(B.) (Michie 1998). Indeed, the Indiana rule specifically provides that “[sjalaried or contractual public defenders may be appointed as trial counsel in a capital case” so long as the public defender’s caseload does not exceed a set *616 maximum and other trial dates are not too close in time to the capital trial. See Ind. R.Crim. P. 24(B)(3)(c). The reference to public defenders is included under the subsection titled, “Appointment of Qualified Trial Counsel,” and thus necessarily carries the same experience requirements for that class of attorneys as well as private attorneys appointed to represent capital defendants. In the same vein, the only caveat in the Tennessee rule regarding public defenders concerns the schedule of compensation which is inapplicable to employees, such as the-public defenders, already paid by the state. See Tenn. Sup. Ct. R. ISIS)©.[11] It is now time for further exploration of whether sufficient reasons exist which prevent Florida from joining these states in instituting some form of blanket minimum standards for any lawyer representing an indigent defendant in a capital case. Our consideration of the problems in this area should not terminate simply upon the adoption of these provisions, but the discussion and self-analysis must continue. This is one aspect of capital case litigation to which this Court must be ever vigilant with the momentous consequences involved.[12]
As a final note, I certainly agree with the majority’s comment concerning the numerous claims of ineffective assistance of counsel brought before this Court and the corresponding need “to focus attention on the initial process whereby private counsel are appointed, in order to improve the quality of the process and minimize later claims of incompetency.” Majority op. at 614. We must also come to an understanding that the issue of counsel competency is a theme that dominates all involved in capital case litigation. In a recent symposium, former Pennsylvania Attorney General Ernest D. Preate, Jr., made the following observation:
I am a prosecutor, of course, and I believe in the death penalty. But, let me just add quickly, that on the subject before us this morning, counsel competency, my position is a bit different than the stereotypes. [The several other prosecutors present and I] agree that there is a problem with counsel competency in death penalty cases. I think we all have to do something about it if we are to achieve justice for all. We need to have better qualified defense counsel and you’ve already heard the arguments put forward that suggest and demand that that be the standard. But we need to have better qualified prosecutors, too. I believe that in too many of our capital cases, there is ineffective assistance of counsel on both sides ... If you examine the cases as I have, you’ll see-and this is anecdotal evidence but there is, in my view, a sufficient ground to make the statement-ifeai the defense counsel’s ineffective assistance of counsel is not necessarily a mistake that the defense counsel originally made, but a mistake by the prosecutor. The prosecutor did something he or she shouldn’t have done and the defense counsel failed to object or failed to take advantage of it. So the defendant is convicted and put on death row for years before he wins a new trial or a new sentencing proceeding based upon the claim of ineffective assistance of counsel. You see, that’s not fair. It’s not fair to the defendant; not fair to the people that the prosecutor represents or *617 the surviving members of the victim’s family.
Ernest D. Preate, Jr., in The Death of Fairness? Counsel Competency and Due Process in Death Penalty Cases, 31 Hous. L.Rev. 1105, 1120-21 (1994) (emphasis added). This intellectually honest and candid assessment rings true in Florida, as this Court has previously addressed circumstances of prosecutorial misconduct which it has described as serious and which was neither challenged nor rebutted by defense counsel. See, e.g., Ruiz v. State, 24 Fla. L. Weekly S157, S158 (Fla. Apr. 1, 1999) (condemning two instances of unobjected to prosecutorial misconduct as “cross[ing] the line of acceptable advocacy by a wide margin” and as a “blatant appeal to jurors’ emotions”); Urbin v. State, 714 So.2d 411, 418 n. 8, 419-22 (Fla.1998) (noting that defense counsel registered no objections to prosecutor’s penalty phase argument and detailing numerous, egregious examples of prosecutorial misconduct). Accordingly, I wholeheartedly concur with the majority opinion’s admonition for “all judges and lawyers, prosecutors and defense counsel alike, to apply the highest standards of professionalism and ethics to their roles and responsibilities in capital litigation.” Majority op. at 614 (emphasis added). We must also be ever vigilant to continue monitoring and evaluating our system and levels of education, experience, examination, and trial practice for counsel to assure our citizens a judicial process that truly renders justice by its conduct and not simply by eloquent words.
SHAW, ANSTEAD, PARIENTE and QUINCE, JJ., concur.
APPENDIX
Rule 3.112 Minimum Standards for Attorneys in Capital Cases
(a)Statement of Purpose. The purpose of these rules is to set minimum standards for conflict attorneys to help ensure that competent representation will be provided to indigent capital defendants in all cases. Minimum standards that have been promulgated concerning representation for defendants in criminal cases generally and the level of adherence to such standards required for noncapital cases should not be adopted as sufficient for death penalty cases. Counsel in death penalty cases should be required to perform at the level of an attorney reasonably skilled in the specialized practice of capital representation, zealously committed to the capital case, who has had adequate time and resources for preparation. These minimum standards for capital cases are not intended to preclude any circuit from adopting or maintaining standards having greater requirements.
(b) Definitions. A capital trial case is defined as any first-degree murder case in which the State has not formally waived the death penalty bn the record. A capital appeal case is any appeal in which the death penalty has been imposed. A capital postconviction case is any case where the defendant is still under a sentence of death.
(c) List of Qualified Counsel.
(1) Every circuit shall maintain a list of counsel qualified for appointment in capital cases in each of three categories:
(A) lead trial counsel;
(B) trial cocounsel; and
(C) appellate counsel.
No attorney may be appointed to handle a capital trial or appeal unless duly qualified on the appropriate list.
(2) The conflict committee for each circuit is responsible for approving and removing attorneys from the list pursuant to section 925.037, Florida Statutes. Each circuit committee is encouraged to obtain additional input from experienced capital defense counsel.
(3) No attorney may be qualified on any of the capital lists unless he or she has attended within the last year a continuing legal education program of at least ten hours’ duration devoted specifically to the defense of capital cases. Continuing legal *618 education programs meeting the requirements of this rule shall be offered by the Florida Bar or another recognized provider and should be approved for continuing legal education credit by the Florida Bar. The failure to comply with this requirement shall be cause for removal from the list until the requirement is fulfilled.
(d) Appointment of Counsel. A court must appoint lead counsel and, upon written application and a showing of need by lead counsel, should appoint cocounsel to handle every capital trial in which the defendant is not represented by retained counsel or the Public Defender. Lead-counsel shall have the right to select co-counsel from attorneys on the lead counsel or cocounsel list. Both attorneys shall be reasonably compensated for the trial and sentencing phase. Except under extraordinary circumstances, only one attorney may be compensated for other proceedings.
(e) Lead Counsel. Lead trial counsel assignments should be given to attorneys who:
(1) are members of the bar admitted to practice in the jurisdiction or admitted to practice pro hac vice; and
(2) are experienced and active trial practitioners with at least five years of litigation experience in the field of criminal law; and
(3) have prior experience as lead counsel in no fewer than nine jury trials of serious and complex cases which were tried to completion, as well as prior experience as lead defense counsel or cocounsel in at least two cases tried to completion in which the death penalty was sought. In addition, of the nine jury trials which were tried to completion, the attorney should have been lead counsel in at least three cases in which the charge was murder; or alternatively, of the nine jury trials, at least one was a murder trial and an additional five were felony jury trials; and
(4) are familiar with the practice and procedure of the criminal courts of the jurisdiction; and
(5) are familiar with and experienced in the utilization of expert witnesses and evidence, including but not limited to psychiatric and forensic evidence; and
(6) have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to capital cases.
(0 Cocounsel. Trial cocounsel assignments should be given to attorneys who:
(1) are members of the bar admitted to practice in the jurisdiction or admitted to practice pro hac vice; and
(2) who qualify as lead counsel under paragraph (e) of these standards or meet the following requirements:
(A) are experienced and active trial practitioners with at least three years of litigation experience in the field of criminal law; and
(B) have prior experience as lead counsel or cocounsel in no fewer than three jury trials of serious and complex cases which were tried to completion, at least two of which were trials in which the charge was murder; or alternatively, of the three jury trials, at least one was a murder trial and one was a felony jury trial; and
(C) are familiar with the practice and procedure of the criminal courts of the jurisdiction; and
(D) have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to capital cases.
(g) Appellate Counsel. Appellate counsel assignments should be given to attorneys who:
(1) are members of the bar admitted to practice in the jurisdiction or admitted to practice pro hac vice; and
(2) are experienced and active trial or appellate practitioners with at least five *619 years of experience in the field of criminal law; and
(3) have prior experience in the appeal of at least one case where a sentence of death was imposed, as well as prior experience as lead counsel in the appeal of no fewer than three felony convictions in federal or state court, at least one of which was an appeal of a murder conviction; or alternatively, have prior experience as lead counsel in the appeal of no fewer than six felony convictions in federal or state court, at least two of which were appeals of a murder conviction; and
(4) are familiar with the practice and procedure of the appellate courts of the jurisdiction; and
(5) have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to capital cases.
(h) Exceptional Circumstances. In the event that the trial court determines that counsel meeting the technical requirements of this rule is not available and that exceptional circumstances require appointment of other counsel, the trial court shall enter an order specifying, in writing, the exceptional circumstances requiring deviation from the rule and the court’s explicit determination that counsel chosen will provide competent representation in accord with the policy concerns of the rule.
Comments
Introductory Statement. These standards are based on the general premise that the defense of a capital case requires specialized skill and expertise. The Supreme Court has not only the authority, but the constitutional responsibility to ensure that indigent defendants are provided with competent counsel, especially in capital cases where the State seeks to take the life of the indigent defendant. The Supreme Court also has exclusive jurisdiction under Article V section 15 of the Florida Constitution to “[rjegulate the admission of persons to the practice of law and the discipline of persons admitted.” Implied in this grant of authority is the power to set the minimum requirements for the admission to practice law, see In re Florida Board of Bar Examiners, 353 So.2d 98 (Fla.1977), as well as the minimum requirements for certain kinds of specialized legal work. The Supreme Court has adopted minimum educational and experience requirements for board certification in other specialized fields of the law.
The experience and continuing educational requirements in these standards are based on existing local standards in effect throughout the state as well as comparable standards in effect in other states. Specifically, the committee considered the standards for the appointment of counsel in capital cases in the Second, Sixth, Eleventh, Fifteenth, and Seventeenth Circuits, the statewide standards for appointing counsel in capital cases in California, Indiana, Louisiana, Ohio, and New York, and the American Bar Association standards for appointment of counsel in capital cases.
These standards are intended to apply only in those cases in which the court is appointing a lawyer in place of the public defender. Nothing expressed herein should be interpreted as an infringement of the defendant’s right to select retained counsel.
Furthermore, these standards are not intended to establish any independent legal rights. For example, the failure to appoint cocounsel, standing alone, has not been recognized as a ground for relief from a conviction or sentence. See Ferrell v. State, 653 So.2d 367 (Fla.1995); Lowe v. State, 650 So.2d 969 (Fla.1994); Armstrong v. State, 642 So.2d 730 (Fla.1994). Rather, these cases stand for the proposition that a showing of inadequacy of representation in the particular case is required. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). These rulings are not affected by the adoption of these standards. Any claims of *620 ineffective assistance of counsel -will be controlled by Strickland.
(d) Appointment of Counsel. At the time of appointment of qualified counsel, the trial court should conduct an inquiry relating to counsel’s availability to provide effective assistance of counsel to the defendant. In assessing the availability of prospective counsel, the court should consider the number of capital or other cases then being handled by the attorney and any other circumstances bearing on the attorney’s readiness to provide effective assistance of counsel to the defendant in a timely fashion.
The American Bar Association Standards and many other state standards require the appointment of two lawyers at the trial level in every prosecution that could result in the imposition of the death penalty. The committee has modified this requirement by eliminating certain provisions that may be unnecessary or economically unfeasible. Paragraph (d) minimizes the potential duplication of expenses by limiting the compensable participation of cocounsel. In addition, the standard adopted herein requires an initial showing by lead counsel of the need for cocounsel and, while the standard suggests that co-counsel should ordinarily be appointed, the ultimate decision is left to the discretion of the trial court.
The committee emphasizes that the right to appointed counsel is not enlarged by the application of these standards. The court should appoint conflict counsel only if there is a conflict and the defendant otherwise qualifies for representation by the Public Defender. A defendant who is represented by retained counsel is not entitled to the appointment of a second lawyer at public expense merely because that defendant is unable to bear the cost of retaining two lawyers. As previously noted, these standards apply only to those cases in which the defendant is indigent and unrepresented and not to a case in which the defendant has retained private counsel.

. According to one commentator’s research, an interesting, if unintended, effect of rule 24 has been a decrease in death penalty case filings since the rule's enactment on January 1, 1992. See Norman Lefstein, Reform of Defense Representation in Capital Cases: The Indiana Experience and its Implications for the Nation, 29 Ind. L.Rev. 495 (1996). Interviews of prosecutors by Professor Lefstein, a former chairman of the Indiana Public Defender Commission, reveal that rule 24 has “put some economic judgment” into death penalty filing decisions because of the increased costs incurred by counties in capital cases. Further, prosecutors and defense attorneys agree that other factors attributable to rule 24 also account for this decline in filings, including the increased time defense attorneys devote to capital cases; the greater resources at their disposal, such as expert witnesses; and the resulting pressure on prosecuting offices to devote more of their scarce resources to capital cases. Id. at 511. Based on subject interviews and the analysis of empirical information, Professor Lefstein concludes:
By improving the quality of defense services in Indiana capital cases, some of the factors that influence prosecutors in exercising their unfettered discretion to seek or not to seek the death penalty have become more evident. Both the objective and interview data presented in this Article strongly suggest that in deciding upon the death penalty prosecutors evaluate more than just the aggravating and mitigating factors specified for the jury’s consideration. The ability of defense counsel, the cost of the prosecution, and the burden on the prosecutor's staff, are among the extra-legal factors that prosecutors take into account. These findings, in turn, raise significant and enduring questions about the basic fairness of the scheme for capital punishment in Indiana and other states.
Id. at 533 (footnotes omitted) (emphasis added).

. Similar to the Indiana rule, the reference to public defenders in the Tennessee rule is included within a subsection titled "Minimum Qualifications and Compensation of Counsel in Capital Cases.” Tenn. Sup.Ct. R. 13(3).

. I recognize the valid constitutional concerns voiced at oral argument regarding application of these standards to public defenders. See Art. V, § 18, Fla. Const, (providing that "[i]n each judicial circuit a public defender shall be elected for a term of four years, who shall perform duties prescribed by general law”). However, the public defender’s status as an elected public official should not command abandonment of this Court's constitutional duty to ensure the due process rights of capital defendants, guard against the imposition of excessive punishments, and adopt rules of practice and procedure. See Art. I, §§ 9, 17; art. V, § 2, Fla. Const.